### E. Orris Hart, Trading as E. Orris Hart & Company, Appellee, v. Gustav Ehrhardt, Appellant.

### Gen. No. 16,718.

1. BROKERS—*when entitled to commission.* Where a broker produces a prospective purchaser and his principal gives the exclusive agency to another broker and closes a deal through the latter with such purchaser, when it is shown that the principal has not been neutral or fair between the two brokers but wrongfully prevented his first broker from bringing about an agreement, he is liable to him for commission.

2. BROKERS—*must bring about agreement, except when.* A broker, in order to be entitled to his commission, must bring about an agreement, unless he is wrongfully prevented by his principal from so doing.

Appeal from the Municipal Court of Chicago; the Hon. MAX EBERHARDT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed January 29, 1913.

MARK R. SHERMAN, for appellant.

F. L. SALISBURY and M. MARSO, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit instituted in the Municipal Court by the appellee, E. Orris Hart, doing business as E. Orris Hart and Company, against the appellant, Gustav Ehrhardt, to recover a commission for services as a real estate broker. A trial by jury resulted in a verdict and judgment against appellant for $1,850.

It is insisted that the verdict is contrary to law and against the manifest weight of the evidence.

On May 7, 1908, appellant addressed a written communication to appellee, wherein he stated that he was the owner of a certain apartment building known as the Bon Air, situated on the northeast corner of Leland and Winthrop avenues; that his price on the property was $85,000, and the same was incumbered for $40,000; that he would consider in part payment for his equity vacant property in good location. The communication contained a somewhat detailed description of the property and concluded with a request to appellee, if he should have a prospective purchaser, to confer with appellant. This communication appellee subsequently brought to the attention of Henry F. Knipp and F. E. Rutledge, two of his employees or subagents, who proceeded to find a purchaser for the property. In June, 1909, appellant, at the solicitation of Knipp, examined some property located at 3948-50 Indiana avenue, owned by J. B. Waller, and Knipp informed appellant that Waller would be willing to make an even exchange of the two properties. This proposal was declined by appellant and further negotiations resulted in a proposal by Waller to exchange the Indiana avenue property and 30 feet of vacant property on Buena avenue which was also owned by him for appellant's property. This proposal was also rejected by appellant, and appellant made a counter proposition to make the exchange provided Waller would pay him $7,500 in cash. The counter proposition was declined by Waller. From July 1, 1909, to July 26, 1909, Knipp had frequent interviews with appellant and Waller, and on the latter date appellant gave to appellee a written authorization to accept in exchange for his property, subject to a mortgage of $38,000 and to the taxes and assessments levied after 1908, the properties on Indiana avenue and Buena avenue with $5,000, appellee to retain as his own commission whatever he might realize in

excess of $5,000.   This authorization was limited to ten days and upon being submitted to Waller was declined by him.   This proposal appears to have been made by appellant in response to a proposal by Waller to make an exchange of the properties mentioned and pay appellant $2,500 in cash, which latter proposal appellant had declined to accept.   Further negotiations were had with a view to disposing of appellant's property, and on August 16, 1909, appellant gave appellee a written option, until the Monday following, to effect an exchange of the same properties upon substantially like terms for a commission of $1,500.

At this time Waller was absent from the city, and did not return until September or October, but in the meantime appellee called the attention of appellant to several other properties for the purpose of effecting an exchange.   About September 7th appellant procured a loan of $5,000 and secured the same by a second mortgage upon the property.   This loan was negotiated through the firm of Mulholand & Snelling, and in consideration for their services appellant gave them an exclusive agency for three months to sell his property for $68,000.   On October 29th following, a contract was entered into between appellant and Waller for the exchange of the same properties, subject to encumbrance amounting to $40,000 on appellant's property and to the payment of accrued interest from February 1, 1909, on $35,000 of said encumbrance. This contract of exchange was concluded by Mulholand and was consummated by the execution and delivery of deeds on November 2nd following.

The evidence tends to show that appellant informed Mulholand of the negotiations that had been theretofore carried on by appellee to effect an exchange of the properties with Waller; that appellant knew that Mulholand had tendered his services to appellee in making an effort to consummate the deal, providing appellee would divide the commissions, and that appellee had refused to do so; that subsequent to the

time appellant gave Mulholand & Snelling an exclusive agency for the sale of the property, he continued to negotiate with appellee with a view to effecting an exchange of his property.

Appellee testified that he had a conversation with appellant about the middle of October, 1909, in regard to the Waller deal, and that in response to appellant's statement that in the future he would be represented by Mulholand, appellee said he would not consider Mulholand in any deal then or thereafter pending, and appellant replied, that was all right he would take care of Mulholand, if a satisfactory deal was made. Appellant denied that he negotiated with appellee or his agents with reference to an exchange of properties with Waller, after he gave an exclusive agency to Mulholand & Snelling, but appellee, Knipp and Rutledge testified to the contrary.

A careful consideration of the voluminous and contradictory evidence impels us to the conclusion that the jury were not unwarranted in finding that there was a studied effort on the part of appellant to deprive appellee of the fruit of his services and to have the same inure to the benefit of Mulholand. Appellant had declined to make the exchange with Waller upon more favorable terms when the same were procured by appellee. As in Day v. Porter, 161 Ill. 235, the evidence tends to show that appellant was not neutral or fair as between the two brokers whom he permitted to negotiate for an exchange or sale of his property. A broker, in order to be entitled to his commission, must bring about an agreement unless he is wrongfully prevented by his principal from so doing. Under the latter alternative the liability of appellant may be sustained.

It is urged that "the court erred in permitting evidence to be given regarding the rules of the real estate boards in Chicago as to the rates of commission charged for selling property." The abstract of the testimony of appellee suggests that reference was

made to commissions charged in the City of Chicago, "by the real estate boards," but in this respect the abstract is a departure from the record. No such rules were offered in evidence and the record contains no reference thereto.

There is no error in the record and the judgment is affirmed.

*Judgment affirmed.*